Okay, our next case is number 2012-1510, Rembrandt v. Johnson & Johnson. Mr. Holdreth? Thank you, Your Honor. May it please the Court? My name is Jake Holdreth. I'm here on behalf of Appellate Rembrandt. The points I intend to focus on today are, first, that circumstantial evidence is admissible to prove infringement. The Court should not affirm a case that stands for the proposition that circumstantial evidence is inadmissible to prove infringement. The District Court erred by refusing it. Did the District Court say that? Absolutely, Your Honor. Where? The District Court unambiguously granted a motion in limine. The relief requested was... Where did the District Court say you can't use circumstantial evidence to prove infringement? Did the District Court say that? What he said is we could not use circumstantial evidence to prove the sure delimitation. And he unambiguously granted a motion. I didn't see him say that. I saw... I believe that the only thing the District Court said was you can't use your common usage of the word soft to establish that soft, that these contact lenses necessarily had a hardness less than 5. I think that's a far cry different from saying, no circumstantial evidence in my courtroom, son. That would be the case, except that here, Your Honor, the... and Jane Jay agrees with this, by the way. I think it's page 39 of their brief where they say the Court excluded all evidence of sure deed except for testing. Now the Court said, and that's Jane Jay's response brief at 39, the order at the appendix at 42 said, simply, I'm going to grant the motion where the relief requested was to bar any evidence other than sure deed testing. Okay, but that's not the same thing as saying you can't rely on circumstantial evidence to prove infringement. You may disagree with his ruling in this case, but he didn't make a broad ruling about circumstantial evidence not being confident. Well, that was the effect of the Court's ruling. I mean, we... But that's a big difference in his statement, which would be questionable. He didn't make that statement. Let me revise my statement then. If the Court affirms this decision, I believe this case will be cited for the proposition that circumstantial evidence may be excluded. Was this... wasn't there a jury trial? There was a jury trial. And didn't the jury hear the circumstantial evidence? The jury heard the circumstantial evidence. And they ruled that there was no infringement. They did not hear any argument pointing out to them that this evidence was proof of the sure deed value of the lenses. That was what was precluded. The evidence came in for other purposes. There was no preclusion before the trial, right? Isn't the preclusion entirely as a result of the post-trial jailment? No, Your Honor. Your Honor, we were precluded from arguing to the jury and examining the witnesses and pointing out to the jury, through examination of the witnesses and in closing, that this circumstantial evidence was in the record and that it proved the sure deed value of the lenses. And where is the ruling that precluded you from doing that? It was the ruling in limine, prior to trial, where the Court explicitly told us, we cannot use any evidence except sure deed testing to prove the soft limitation. He also did cut off our expert... Do you have a cite and a record to that ruling? I do, Your Honor. That ruling is found in the appendix at 42. And the order was simply, I'm going to grant the motion. The Court affirmed that ruling during the examination of our... No, we're not going to grant the motion. He has the whole discussion. He explained that, so let's see, the argument preceding that grant was lenses widely acknowledged, we have them to be soft, don't fit that category. If you do sure deed testing that way, as Mr. Beebe did. So there's this back-and-forth discussion, as I understand it, about whether or not a lens that is characterized in the industry on prospectus or marketing material as soft does or does not necessarily meet the five or less. And he says, ultimately, traditionally thought of as soft contact lenses, I don't think that's circumstantial evidence that it meets the claim definition here, which everybody says is the claim definition. So it doesn't seem to me that he's ruled out circumstantial evidence. Because he said that the particular circumstantial evidence which you are claiming ought to be admitted is not relevant because it doesn't actually indicate that they're five or less. They might be called soft by somebody in the industry, but that doesn't mean they're five or less. And he seems to have said that very clearly in this holding. If he's wrong about that, if he abused his discretion, because that's my standard of review, then tell me why. The circumstantial evidence of soft goes far beyond simply that the lenses are characterized as soft. The circumstantial evidence includes an undisputed record that pure vision lenses infringe the claims and have a surety value of less than five. That's in the reexamination file history. Yeah, that's the thing Dr. Beebe tested, right? In the reexamination. You're really distracting me. So Dr. Beebe tested those lenses in the reexamination. And he said these other lenses, which are not at all related to these lenses, have a surety of less than five. Why does that mean these lenses have a surety of less than five? Because J&J admits, and it's undisputed, that the modulus of the accused lenses is far lower than the modulus of those pure vision lenses. And that is found in the record at A10950 and 54, which was Plaintiff's Trial Exhibit 217. In that document, J&J characterized its lenses as far softer than pure vision, measured the modulus values, which for the infringing pure vision lens with a surety of less than five were around 200. For the accused lenses were around 100 and around 50 respectively. And the testing standard for surety ASTM unambiguously establishes that surety hardness depends on modulus. So it's a very simple, clear set of circumstantial evidence, undisputed, that there is a lens known in the file history to have a surety value of less than five, that J&J itself, by its own testing, different method, modulus, but one on which surety depends, agrees, undisputed, that its lenses are softer, have a lower modulus. How do I know that the Illuminate ruling excluded that? When I look at page 4142, and I see the district court saying, you're not going to be able to use the industry characterization of these lenses, its soft lenses, as circumstantial evidence of infringement. Let's assume for the moment he's right about that, okay? What is it about the ruling that excludes this other type of evidence, such as the thing that you just referred to? The clearest example, Your Honor, I think is in our motion for a new trial. No, no, no, at the time, at the time. How do we know that he would have excluded that from use of the trial? Yeah, was that evidence the subject of the motion in Illuminate? Was it mentioned in the motion in Illuminate? In our motion in Illuminate at the time, we gave general background to the court that the circumstantial evidence included the properties of the lenses, that they are hydrogel lenses with a water content over 25, which is additional circumstantial evidence that they have a surety less than 5. We did not in that motion specifically point to Trial Exhibit 217 that has this discussion of modulus. So why wasn't, if you wanted to rely on this, why wasn't there then an obligation on your part to bring it up at trial and rely on it, argue it? It doesn't seem to me that the motion in Illuminate forbade you from doing that. We believe that it did, and the court did make an additional exclusionary ruling when our expert... Wait, why? I'm explaining. When our expert, Tom Beebe, began to testify about other evidence of soft, during his examination, J&J's lawyer made an objection, and the court cut Dr. Beebe off and said, we're not going to do that. That was in the record at Appendix 6772. Was that testimony about these other lenses? That testimony, he couldn't get beyond, there is other evidence that the lenses are soft. What page is this in? A6772. Which volume is that? That would be in the first volume, Your Honor. And to be clear, I'm not arguing that we were specifically offering in that question an answer to the modulus evidence. It was an indication that the trial court was carefully policing his ruling. Yeah, but it seems to me you've got a problem because you've got a ruling, which it seems to me you agree wasn't addressed to the specific evidence, and you're arguing that you didn't do what you needed to do in terms of raising this issue because of a ruling that didn't address the issue. Well... And I don't, that's not, I mean, we end up reversing a lot of jury verdicts if we took that loose a standard in terms of how you had to preserve issues. Well, Your Honor, I think that the scope of his ruling is undisputed. In Jane Jay's brief at page 39, Jane Jay argues, Vistacon moved pretrials to bar Rembrandt from using evidence other than sure D testing to prove the soft limitation. The court granted the motion. So the parties certainly understood that ruling as being preclusive of any evidence other than sure D testing. And I don't think it's practical or required for us to continuously challenge rulings on motions in limine throughout the trial where the courts indicated no willingness to revisit them. I don't, see, I'm having trouble reading that ruling and saying you can only put in evidence of sure D testing because I don't see that that is the rule. And I don't understand that that's the ruling that was requested. It was unambiguous in the motion that the requested relief, this is at A4820, the requested relief was any evidence other than sure D testing that purports to show Vistacon's lenses are soft is irrelevant and should be excluded. 4820? At 4820, that's what Jane Jay asked for. At A42, the court said, I'm going to grant the motion in limine. 4820? Yes, sir. Where does this say that? It's just above heading nine with the grain processing site. That last sentence that says any evidence other than sure D testing that purports to show Vistacon's lenses are soft is irrelevant and should be excluded. We don't have the rest of this motion, do we? Okay. And the court at A42 granted that motion and Jane Jay at its brief at page 39 characterizes that ruling as a ruling that using evidence other than sure D testing to prove the soft limitation was excluded. That's how the parties understood it. Okay. So what else did you have besides the sure D number for these other lenses? So as I said, Jane Jay at, in particular, A10950 and 54 did its own modulus testing, which is another hardness test. Came up with specific values, which are half to a quarter of the value of the pure vision lens. And the ASTM standard itself at A12052 explains that sure D depends on modulus. That's one simple logic train. Another is that the file history defines lenses with a sure D near zero as lenses with water content above 30% that are hydrophilic. Where is the evidence that there is a correlation between modulus and sure D? In particular, the evidence that would have told someone that the fact that there exists modulus testing for something is precisely correlated to a particular sure D? Your Honor, the evidence that is in the record is from the ASTM standard. And the ASTM standard states that in the appendix at page 12052 that sure D hardness depends on modulus. Yeah, but to say something depends on it, it seems to me far cry different from what you want to be able to say, which is Mr. Beebe did some testing of a different product in a re-exam. This is its modulus. And then you want to take that and say, therefore we know it must have a sure D of five or less. This product must have a sure D of five or less. Depends on it. Could go up, could go down. We don't know which way it goes, right? Modulus, how it correlates exactly to sure D. And the ASTM standard doesn't explain that correlation. It doesn't say if modulus goes up, sure D goes up. If modulus goes down, sure D goes down, right? So you're missing a critical link that you would have needed to establish infringement in the proof, it seems to me. The J&J document, which tests modulus, and this is found at A12300, explains that as modulus decreases, the lens is softer. And is that part of the record or was that the excluded hearsay statement? That is part of the record. And the same statement is found at A10955, which explains, and at A10954, which are J&J documents where J&J explains, modulus lower values means material is more flexible and softer. You know, here's part of my problem, and I need you to tell me how to get there because it's what you want. So suppose that I were to conclude that if I were reviewing a jury verdict of a finding of infringement, that everything you've pointed me to in the record, you know, getting there this way through that document to this document, explaining the correlation between modulus and sure D, is adequate to sustain a jury verdict. Suppose that I were to agree with you on that. That's a different standard than abuse of discretion for evidentiary exclusion. So how do I conclude the district court abused his discretion, a standard which I have to give even greater deference to, because he excluded something that maybe a jury could have found infringement based upon? Well, the ruling, categorically, was that circumstantial evidence was precluded. But I don't agree with that. None of us agree with that. So just abandon that and move forward to something else. All right. Try number two. Okay. So this is relevant circumstantial evidence. It was excluded solely because the court decided, for an arbitrary reason he did not give, that he was only going to permit sure D testing. No, but he didn't say that. That's not what he said. He said that just because these particular lenses are, quote, traditionally thought of as soft contact lenses, I don't think that's circumstantial evidence. That's the ruling. And the evidence you're talking about doesn't fit into that category. And the question is whether you had an obligation to test this ruling, which seems to be based on a theory that doesn't apply to this additional evidence. This is not just evidence that it's traditionally known as soft contact lenses. So, I mean, there's a real risk here of sandbagging. You go through the trial, you know, you've got a ruling which might be interpreted to bar this evidence. You don't raise it again at the trial. You don't test the ruling. You don't say to the judge, well, this isn't traditional soft contact lens evidence. This is something specific. We'd like to introduce this. And you wait until after the trial, and then you say, ah-ha, you know. I mean, that's a problem. Let me try this tact, and I'll try to answer both questions. This is evidence which is highly persuasive, highly relevant evidence. If you bring it up in your opposition to their motion of limine in particular, because here's the thing. I feel like you're arguing a very different case on appeal than you tried at trial. And, you know, I understand why. I've never seen somebody unravel the way Dr. Beebe did. I mean, it's shocking, quite frankly. And so you were left with what you were left with at the end of the day. And you're trying a case on appeal, and my question is, did you really preserve it below? Among other things, I'd like to ask, with my colleague's consent, to have the full motion in limine and the full opposition on this point submitted to the court, because I believe they're under seal as well, so I couldn't get them. And so I'd like to ask you to submit them for us so that we can review that. To your recollection in your opposition to the motion in limine, did you expressly say, wait, Judge, time out. There's this very particular evidence, sure D, the correlation with modulus, yada, yada, yada. This isn't expressly sure D testing. However, Your Honor, it's also not just an industry characterization of the word soft. What the motion in limine argued very specifically was, in particular, that the file history distinguished hard and soft lenses based on their properties. That soft lenses were lenses which have a water content over 30 and that are hydrogels. And I'm doing this from my native memory, but it's approximately this. That evidence that the accused lenses are hydrogels with a high water content that they fall within the traditional soft gas permeable lens characterization is evidence that they have a sure D of less than 5. The dispute... What's the support for that? That's the correlation between the evidence that you thought you were trying to get in to get to the sure D limitation, which you had delivered. The file history evidence, Your Honor, is found in particular at A339 and at A2596. And that is where the inventor explains there are two very different kinds of lenses, soft and hard, and that their main difference is their water content over 30 for soft lenses, under half a percent for hard lenses or rigid lenses. I understand that, but I mean, the claim construction that you were stuck with came from Judge Ward when the case got transferred and that was the sure D limitation. Sure. But you could prove circumstantially that you have a sure D of less than 5 by showing the lenses a hydrogel with over 30% water, which the accused lenses undisputedly are. Now, the dispute... I guess the question is whether you made that argument... Accordingly. ...specifically in your paper on the NLemonade motion. The answer is yes, although the focus of the motion was there was a dispute over whether the lenses should be tested in their wet condition. Soft, wet, finished lenses, or whether they should be tested as a dry blank of dried lens material. That's what the fight was before trial. And so that's the fight we were addressing. We're primarily arguing, you know that the correct test is to test a wet lens because wet lenses are the only ones... But you're claiming the motion in Lemonade broadly excludes all kinds of stuff. Yes, ma'am. Anything but sure D testing. And JJ agrees. You had an obligation to bring to the district court to his attention expressly what it was you wanted to introduce that was different from just a blanket characterization of soft. And so did you do that? Did you bring this particular evidence to his attention in opposition to the motion in Lemonade so that he would be ruling on exactly what it is you're telling us he did wrong? Certainly we brought to his attention that the hard soft distinction is between high water content, hydrogel lenses... What does that have to do with the modulus testing, the re-exam testing by Dr. Beebe, and whether or not it shows that this lens would therefore have a hardness of less than 5? We very specifically brought up the re-exam testing because it shows that what you test is a wet lens. But did you relate it to... Did you relate the modulus testing to... I don't think... I'm sorry, Your Honor, I didn't mean to cut you off. In the papers, did you relate modulus testing to the Sure-D testing? My unneeded memory is that in the motion in Lemonade we did not mention modulus specifically. Don't you have a surface layer problem as well? May I address that, Your Honor? Even assuming you're right on all this, we've got a jury verdict here that there's no infringement. The jury could have gone off on the surface layer limitation. So you've got to win on both. We do have to win on both. It's undisputed the claim is not limited to a coding, I believe. And it was error to allow J&J to argue that the absence of a coding was an infringement. But just your argument on that point turns on the jury instruction that you wanted that wasn't given, right? Yes, we moved in Lemonade before trial. Take the whole issue and tie it up into one point. Yes, Your Honor. We moved in Lemonade before trial that J&J should not argue the absence of a coding was a defense. We objected at trial to expert testimony that the absence of coding was a defense. And we asked for a jury instruction after trial. Was there more than one objection to the expert testimony? There was, Your Honor. And we did allow in fact testimony and some expert testimony that the lenses are uncoded. That was not an irrelevant fact. What we objected to was arguing to the jury that an uncoded lens is therefore not... So it's not the expert testimony, it's the closing argument that's the problem? It is the closing argument, but also the expert testimony when the expert tried to say because there is no coding, there is not infringement. That's simply an error. Now, even if we had allowed... Was there testimony of that effect? Yes. Where do I find that? To the fact that they're uncoded or that the uncoding... Where is the expert testimony that says that because it wasn't coded, it was infringed? That, Your Honor, is found... For example... I believe it's at pages A56 to 58. But even if we had not objected to any of the experts... Wait, wait, wait. Yes, Your Honor. 56 to 58. So where is this witness testifying that there's no infringement because there's no coding? I apologize, Your Honor. I see that... So A58 is where I make the objection, and I see that we omitted the trial transcript just prior to that, which is going to be volume 8 at pages 212 to 213. And so I apologize. It's not in the appendix specifically. The objection is. But even if we had not... Even if we had not objected to the expert testimony, we still get a jury instruction telling the jury what the claim scope is. I mean, it's not a waiver of a correct instruction to the jury of what the claim scope is. But, Your Honor, there's no rule that every correct instruction has to be given. And in order to make a case that this instruction had to be given, you have to show that there was something that required it. In other words, that there was argument that necessitated this jury instruction. Absolutely. And in the closing argument, counsel argued you've got to do... This is at A8685. A8685. Yes, sir. You've got to do what the judge says to do. You've got to use this language referring to the claim language. But if you think that adds up to thinking about a coding, well, that's a pretty fair assessment of a layer. Also, at A8699, there was argument that a surface layer is a coding. They are the same thing. What was the latter page? A8699. Also, at A8683, counsel argued... That's true, though. A surface layer would be a coding. Not necessarily, Your Honor. A coding is a form of surface layer, but a surface layer is not necessarily a coding. Yes. I'm sorry. I may have misunderstood the question. No, no. You can say, well, if you coded it as a surface layer, right? Right. That's true. We know that. Yes. You were just trying to say that you can also have a surface layer without coding. Absolutely, Your Honor. And there was testimony about how this happens. It migrates, right? That's absolutely right, Your Honor. We heard all that testimony about how this can migrate. Absolutely. Yes. Why didn't you object to this part of the closing argument? Well, Your Honor, we had at that point asked for a jury instruction. The judge told us prior to closing that the jury was going to have to figure out whether a surface layer and a coding are the same thing or not. So it had been made clear to us, the judge had ruled, this was going to be argument for the jury. There was no point in objecting at that point. It would have been feasible. The court was very clear on that. Where does the judge make that remark? What page? The objection or the jury instruction was proposed at the charge conference, and the court unambiguously said he was not going to give the instruction. And if you'll give me just a sec, Your Honor, I'll give you the cite. At A62 is where we asked for the instruction. The fact the contact lens is made with or without a coding is not determinative of any limitation in the 327 patent. And the court said, I'm going to reject that sentence. Where is this? A62, Your Honor. And he made the same ruling at A63. And he had told us as well during the expert testimony colloquy. What was the instruction the judge actually gave? The instruction he actually gave in this particular part of the instruction did not refer to a coding or a surface layer either way. There was a separate instruction where he said the way the lens is made is not determinative. Where does the judge say the jury will have to figure out whether a coding and surface layer are the same? Which I thought you said he said. That specific statement is found in the colloquy where he was allowing the experts to testify about a coding. And that, if you'll give me just a moment, is found. With the court's permission, Your Honor, if I may find that while my counsel is arguing, I'll give you the slide. Counsel, at A63, which you pointed us to, where he declines to add the sentence, he says, and both the jury and the parties are required to follow that instruction of the law. Nobody has told me it's an incorrect instruction. And how the parties comply with it, I think I'm hoping it won't be a problem. And if it is, there'll be an objection and I'll have to overrule or sustain it. Isn't he expressly telling you that I'm not going to add this sentence now. If you think later there's a problem, you'll make an objection. He's expressly telling you, make an objection later and I'll sustain it or overrule it. And so you didn't make the objection when he made an argument in closing you believe would have misled the jury after the judge expressly told you that burden was on you. I'm sorry, Your Honor. Am I misunderstanding what he said? Case A63, at the top of the page, this is right after he says I'm going to reject that sentence and then he goes down and says both the jury and the parties are required to follow the law. That discussion of that paragraph was on his alternate instruction he gave. J&J's argument was the court is telling the jury already that it doesn't matter how the lens is made, which is a true statement. There is no manufacturing limitation in these claims. Parties agree on that. The court's expressing the view that that instruction was sufficient on the issue we were concerned about. And J&J had agreed we're not going to argue that there is a process limitation. It doesn't matter how it's made, so whether it has a coding or not is irrelevant. That is J&J's argument, correct. Isn't that a reasonable interpretation of what the judge told the jury? Yes or no. No. The problem here is that J&J directly told the jury because there is no coding, there is no infringement. Well, I think what Judge Moore was saying was you didn't stand up and yell loud enough when they were being told that. The judge is going to give an instruction that says how you make it is irrelevant. So whether you have a coding or not is irrelevant. I wouldn't have understood it that way if I'd been the jury public. So the discussion that was had throughout the trial, including, for example, A8315, was Mr. Discan is proposing to make an explicit argument directly contrary to the claim construction that the claim should be interpreted to require a separate process to manufacture a coding on the surface. We said there's a difference between a layer and a coding, and that's the argument Judge Ward relied on. Who are you reading from? This is my objection to the court to the argument that a coding is determinative of infringement. You're saying this is before he made the argument? This is before the closing argument. You're anticipating what he's saying, so you're setting it up, right? Exactly. We made a motion to eliminate before trial. And they said they weren't going to do that, right? No, the court explicitly allowed them to argue that a coding and a surface layer are the same thing. No, no. Where did he say that? As I said, Your Honor, if you'll give me just a moment, I'll give you the site where the court said the jury's going to have to figure it out whether they are the same thing. Why don't you get that on your rebuttal argument? All right, thank you. Mr. Dishkant? May it please the court, I'll focus on the issues that were just raised orally. The first relates to the JMOL, Judgment as a Matter of Law, in which I basically understood counsel to make no arguments about the propriety or the exclusion of Dr. Beebe's testimony, but instead to focus his argument on whether that required JMOL because of the argument that there was hypothetical circumstantial evidence. Well, let's not talk about that. Let's talk first about the eliminate ruling. And they say you understood that as a ruling that excluded any evidence, any circumstantial evidence, that the sure delimitation was met and the only thing that would be permissible was direct evidence that the sure delimitation was met. I would say yes and no to that, which is to say this. Our motion is on page A4819. It's one paragraph, it's very short. Rembrandt should be precluded from arguing to the jury that Vistacon's characterization of its lenses as soft proves that they meet the soft limitation. Vistacon's description of its lenses as soft is a general term understood by the public and ignores sure detesting required by the claim construction. Any evidence other than sure detesting that purports to show Vistacon's lenses are soft is irrelevant. So the focus of our motion was that we feared that because there were literally three uses of the word soft in this upcoming trial, there was the colloquial use of soft used by the manufacturers to describe their lenses, there was a second claim limitation, softness, that had its own defined meaning that was unrelated to sure D, and that there was soft, which required sure detesting. And our motion was directed at keeping those separate and clear so the jury would understand that the soft limitation required sure detesting. That was the purpose of our motion, and it was granted. Suppose they had tried to bring in this testimony about this other lens during the prosecution and said, well, that shows that the sure D limitation was met. Was that precluded by the Illuminate ruling or not? I think everything beyond what its four corners was about was open for re-discussion. If anyone wanted to re-discuss it, to my memory, they did bring that into the case. Well, you say re-discuss, but if the ruling is clear, I don't think they have to re-discuss it. The question I'm asking you is what is the scope of the ruling? They say that you have characterized the ruling as excluding everything except sure detesting of the particular lenses. Is that an accurate statement about how you characterized the ruling? Yes, it is. We viewed the ruling as doing just that, but we never engaged in any of these discussions. We never came back and said, oh, Judge Corrigan, we'd like to offer this, which we think is highly scientific evidence, that is directly probative of this claim limitation for the following reasons. So far as we were concerned, our ruling resulted in the exclusion of know-nothing evidence. It's soft, therefore it meets the sure D requirement. Dr. Beebe did a test under different conditions in a different case that we weren't a party to of a different lens, and he reached a conclusion about that. That's irrelevant, but... And is it irrelevant because, though? This is the important thing. It's irrelevant because they hadn't explained. They hadn't met their burden of showing how it was relevant. You're right. When you present it like that, different case, not party, different lens, it does sound irrelevant. However, what he's argued to us today is the reason it's relevant is because that testing showed the modulus level, which showed that the sure D was at a certain level, and in the industry it's known that modulus is correlated to sure D as follows. Higher modulus, higher sure D. Lower modulus, lower sure D. Was that argument made to the judge? Is that the argument that he rejected and said, nope, that's still out? Or was it just presented that we've got Dr. Beebe's test of a different lens in a different case, and we'd like to introduce it? I have no memory whatsoever of the modulus argument ever being presented to Judge Corrigan as proof that they could rely upon and use. Judge Corrigan is a very open-minded judge. He reconsidered things whenever appropriate. He also was very cognizant. And here, to me, is the real point. He was highly cognizant of the import of his ruling on the Daubert motion. He understood it was going to mandate JAMAL. And so he had several arguments on it. He wanted to clearly hear what the evidence was. And at no time did they come back and say, Judge, there's new evidence here. We didn't try to offer it earlier because we thought it was barred by your order. But in light of your exclusion of the Beebe test results, we'd really like to offer it. And here it is, and can we have a discussion about it? This never happened in a proceeding that went on for several days as we grappled with the consequences of throwing out Beebe's testimony. Now, basically what we have here is a situation in which there's a broad ruling. He expresses the reasoning for that ruling. His traditional soft-lens testimony doesn't do it as circumstantial evidence. They didn't raise at the time the specific testimony that they're now saying should have been admitted. And what you're saying is that they should have tested that broader ruling by raising the specific evidence. And what we have to decide is whether they were obligated to do that. I think that's exactly right. I do note that Judge Corrigan notes that notwithstanding his ruling, they ignored it. If you look at page 821 of his decision, he notes that in summation, Rembrandt told the jury to ignore the problems with Beebe's testimony and methodology because the expected value of any kind of testing of Sure-D is zero. Rembrandt told the jury, it doesn't matter how you stack them, where you stack them, the result is zero. Rembrandt thus intimated that the jury could disregard Beebe's testing and still find the products met the soft limitation. But of course, Dr. Beebe's testing was the only evidence that it offered. So they were very aggressive in pushing the boundaries of the rulings. I think that argument was inappropriate, given the fact they didn't have any other evidence on the subject. I think if they'd had that modulus argument then, they would have presented it and we would have argued about it. And my guess is that Judge Corrigan would have excluded it because I think in the end, I mean, to put this at its sharpest focus, the question is, was it an abuse of discretion for a district judge to require a party who has to prove a Sure-D value less than five to offer Sure-D test results? And I don't see how that can be an abuse of discretion. Would it have been an acceptable jury ruling? I'm not so sure about that. If there are two types of testing and they're correlated with each other and they show one result with one testing and they say it correlates to a Sure-D rating of less than five, I mean, I'm not sure that that would be within district court's discretion to exclude that. Well, it would have to be pretty good evidence. I'm not disagreeing with you that there are circumstances in which lay juries can find scientific thresholds met based on something other than direct test results. But when you're dealing with a test result that is unfamiliar, it's not a question like, did the room feel at room temperature, which we could all offer a lay opinion about. Well, sure. But what they'd say is, if the ruling had gone the other way and we'd been permitted to introduce this evidence, we would have had an expert trace this through for the juror. They don't have an expert. We've had expert disclosure. They don't have any evidence on this. This is an idea they've made up now. There's no expert who is prepared to give that testimony. It was in nobody's expert report. Nothing that happened in the trial record supports the idea that this kind of evidence was on the offing, let alone that it was excluded. I think you would need a very specific… And the motion, to be clear, the motion in Luminae was after the expert report. So if they wanted to create a foundation for being able to claim that modulus testing correlated to sure D and therefore met with the infringement burden, it would have had to have been disclosed already, and they had the opportunity to do it, and they didn't. That's correct. So your position is this is a reaction to Dr. Beebe being excluded in a search for some way to salvage the case. That's exactly right. In terms of a case going forward, what Judge Corrigan eloquently spoke of, the orderly progression of the case under the rules. The orderly progression of the case under the rules contained Dr. Beebe's testing results and nothing about this modulus analysis, which would need a scientist to analyze it and endorse it. Their going in orderly case under Rule 26 is all about Dr. Beebe's testing and nothing else. So I don't see an abuse of discretion here with respect to Judge Corrigan's rulings that absolutely sure D testing, they had nothing, and that therefore JMOL was required. Now, to go beyond JMOL, this court doesn't have to go beyond JMOL. The JMOL ruling legitimately terminates the case. The... Could I move you for, unless my colleagues have more questions about this, could I move you to the instruction point? And it does strike me that there's some statements in the closing argument. I don't know who gave the closing argument. Was that you? Yes, it was. So at 8699, this paragraph again in line 18 does seem to me to equate coding with surface layer. It says that they're the same thing. And to be questionable. No? I'm sorry, you're at 8699? Yeah, line 18. Yes. Let me tell you what the case was about and what the jury, what the proper role of the judge instructions were. There's a claim. The claim required a surface layer. The surface layer was interpreted by the court. We have an ongoing business. In our ongoing business, the term surface layer isn't used. The term coding is used. And the term coding is used by scientists who are familiar with the term surface layer. And they use the word coding as a noun. A layer on a surface is sometimes defined as. And so we have thousands of documents that describe why we have an uncoded lens. And our witnesses in their normal mode of speech talk about our uncoded lens and all the benefits it brings to it. Remember, I had tried to argue that when Johnson & Johnson scientists used the word coding, they must have meant a process step. You must be using it as a verb. And our witnesses all rejected that. They said, no. When I say coding, when I'm talking about a coding, I mean it synonymously with a surface layer. Some of them were familiar with the Chang pattern. Yeah, the Chang pattern there, that surface layer. They call it a coding. So that was a fact question. It wasn't a law question. Fact witnesses who were being accused of infringement testified that in their workaday world, the word they used for what Chang called the surface layer was a coding. And they designed an uncoded stent. They were, lens, excuse me, they were very proud of it. It had all the benefits of an uncoded lens, which are the benefits of a lens that doesn't have a surface layer. The surface layers can cause distortions in light. They can cause injuries to the eye. They can cause chipping. There are many, many problems with coded lenses. And so that was the case we tried. They tried to argue that the, when the J&J people said coding, that they all must have meant a manufacturing step. And we said, no, that wasn't the case. And so our fact witnesses said, we don't have a coding. We don't have a surface layer. We use the term synonymously. They, at the end, they didn't object to any of that testimony. All that testimony came in, they acknowledged its relevance. So we get to the end of the trial. And they want a proper charge. The proper charge is, it does not matter how the accused products were made, or if Vistacon used a different process than that taught or disclosed in the 327 patent. And we agreed with that. And I actually said that to the jury in opening. I explained to them, this is a case, it doesn't matter how it's made. And you're looking for the surface layer. If it's there, we lose. It doesn't matter how we got there. Why did you say then that if this instruction was given, it would put us out of court? Oh, because the instruction, I agreed with the instruction I just read. The instruction they wanted was the fact that a contact lens is made with or without a coding was not determinative of any limitation in the 327 patent. Well, if you accept the testimony of my witnesses, it was determinative. You accept the testimony of the four J&J scientists who testified that they didn't have a coding, and they understood a coding to be the same as a surface layer. If you accepted that as true, that was determinative. And so this was a loaded question. And the district judge recognized it was a loaded instruction. And it was basically involving the court not in claim construction, because coding is not a claim term, but in the fact dispute that was being tried. And we were entitled... Your argument is that your adversary got themselves into this position because they didn't object to your witnesses testifying that they thought coding meant a surface layer. Right. If they wanted to pick that fight with you, they should have done it at that point in time. Yeah. But I don't even contend they had such a fight. If your evidence was properly in the record, or the charge that they wanted, it would negate... Yeah, it would basically say all that evidence you've been hearing from Mr. Kahn's witnesses, set it aside. Did the jury hear the evidence that your adversary's point is still on their migration theory? True. That you have a surface layer because in the process of making this stuff, something migrates up through, and it becomes a different substance, and therefore is a layer? Yeah, they heard all that testimony, and they rejected it. So they heard a very clean fight on the science of what it is that we had, and how it was fabricated, and they presumptively ruled in our favor. Actually, that brings me to a point I'd just like to make on this whole subject, which is to rule in favor of us on the J-MOL, there's no need to get to any of these trial issues. But if you get to the trial issues, I do want to state that... I don't understand that. I mean, if there was an error on the eliminate motion, then I don't see how we can sustain a J-MOL in your favor. I agree with that. And I said, maybe I misspoke. If you agree with us on the J-MOL... If the case is over. Yeah, if you agree with us on point one, then the case is over. The district court found they failed to prove an element of their case. If we agree with you on point two, does that elide the J-MOL issue internally? Is that what? If we agreed with you on point two, if we said... Oh, then it lied? You didn't need to have another jury instruction. The jury was properly instructed on surface layer. And you've got the 60B thing looming, right? The 60B thing is floating out there. So if we agree on J-MOL, it puts an end to the 60B, and there's no need to send it back to the district court for further proceedings. But if we don't agree on J-MOL, but we do agree with you on the surface layer issue, there's still a remand that's necessary for the judge to address the 60B stuff. Is that right? That's right, essentially. I mean, the only nibble there is that it's in the district court regardless. You're not sending it back. But it's sitting there waiting. The district judge is waiting. I'm confident that in part he's waiting to see what happens with the J-MOL because the J-MOL plainly makes the 60B irrelevant. So I would urge the court to do that. I don't think that... I truly think this argument about circumstantial evidence is a fabricated issue made up after the fact. It's not an issue on which any expert report was addressed that they came to court... Let me come back and ask you a related question. Do we need to reach the J-MOL issue if we were to conclude that jury instructions were adequate on the surface layer limitation and therefore the jury heard the testimony and could have found non-infringement? That would be affirming the judgment as a judgment of non-infringement to say we don't weak any lie. That moots the J-MOL issue. I think you can do that. I'm just pausing to think it through. I should say that I don't think the charge issue really is properly preserved for you. Lay that to one side. I was told we're talking about mechanics, about how the case can be decided. Mechanically, if you affirm the jury verdict, the J-MOL does not have to be decided. But can we affirm the jury verdict without deciding the perjury question? Well, I think anything you do will have an impact on the next round because you will add clarity to the case. I guess what I'm saying is similar to what Judge Clevenger was saying. Is it possible for us to say, well, there was no error in giving the instruction, there was no error in the argument, therefore we can affirm the judgment on the ground that the jury could properly find that the absence of the surface layer requirement was not met? So does the perjury relate to that? Can we affirm the jury verdict? The perjury relates to that. It does relate. It does relate to that. So here's how I would shake out. I would very much urge you to decide the J-MOL issue because I think it is, frankly, very simple and very clear. I think the exclusion of the testimony was absolutely required. I think there was no colorable evidence presented that they suggested to the judge that they had that could have resulted in a verdict in their favor and as a result, the exclusion, the J-MOL was required. I think these arguments about modulus now are truly after the fact and not supported by the trial record. So I think the J-MOL is correct and should be decided. Are the perjury allegations all included in the record we have in front of us or isn't there a desire to adduce further evidence? Yeah, there is a desire. But the further evidence, as I understand it, entirely relates to the surface layer limitation. They got the further evidence to another proceeding, right? Yeah. It's all about whether your expert lied about testing. Yeah, that issue. On surface layer only. On surface layer and related stuff. But it had nothing to do with soft. So the cleanest outcome, if you agreed that it was correct, would be a ruling on J-MOL and I would very much urge that because I think it is correct. Yes, honestly. I'm sorry? Please. Even I figured that out. Nice, sir. Helping along. So anyway, but yeah. What happens today if we simply affirm the jury verdict on the surface layer limitation? The perjury issue is in front of the court, right? I'll tell you how I would argue it. First, I would say, and I would assume this court would affirm without reaching the J-MOL. That is, you would not be reversing the J-MOL. If you reverse the J-MOL, it would be a different set of facts. I would be very disappointed with that. I mean, this is a conscientious district judge who worked long and hard and put himself out there in very thoughtful words. As he said, he was there and you weren't. And I think he deserves to be affirmed. I think it would be, frankly, bad for a public... I'm not disappointing the district judges that will apply in every case. That's true. It's true, but this is... I mean, read his opinions, read the care that he brought to this project and recognize that the issues we're talking about are all abuse of discretion. I mean, was it an abuse of discretion for this district judge to grant Bedalbert to grant the Rule 26 relief and to exclude evidence other than sure detesting on the record that was in front of him? I find it very, very hard for an appellate court to conclude that was an abuse of discretion. So I would urge you to do that. I think we're about out of time. Unless my colleagues have questions. Thank you, Mr. Judge. Okay, thank you very much. I hope I've addressed all your questions. Mr. Holdreth will give you two minutes. Thank you. Thank you, Your Honor. The citation the court asked me for is A-59. And what the court said, it's an intermediate and colloquy, it's not a ruling. What the court said is, aren't they taking the position that it means the same thing referring to coding and surface layer? So isn't that something, I guess that's something the jury is going to have to figure out. I mean, you let all the J&J people say it, isn't that going to be the issue for one of the issues? And although I... Well, that correlates to what your adversary is saying was the testimony that his witnesses put in. That's right. And no objection to that testimony that came in. So I don't think we're required to object when his witnesses say that as a matter of historical fact, they believe there is no coding and no surface layer on the lens. And that when they said coding, by their words, they meant to include a surface layer. That is not the same thing as allowing him to argue that correct claim construction is that a surface layer and a coding are the same thing. If I may briefly, we are not waiving our appeal of the exclusion of Dr. Beebe's shorty test results. The briefs are fully briefed on that issue. I won't spend time, but I want to make it clear we're not waiving that issue. I just want to say on the record, we don't agree that an affirmance of the JAMAL would obviate the 16B motion, and that is because we briefed at the district court this is perjury and party misconduct that is so pervasive that the entire judgment should be set aside, even if there were... In this hypothetical, that'd be something for the district court... Right, that's a district court issue. We just didn't want to leave it unsaid. What are the consequences to your 16B and your perjury claim if we elide the JAMAL issue entirely and affirm on the surface the coding limitation? Then I think the district court will have to make his decision on our motion. And there are further facts that you're seeking to adduce in connection with that motion? We are... That you believe would further support your allegation of a misconduct? Yes, sir. We have substantial evidence in the form of documents, but the Texas proceeding we got those in did not permit us to take unlimited deposition testimony, and it limited the number of witnesses we could ask, so we are still seeking those depositions. Okay, thank you, Mr. Helder. Thank you. Thank you, counsel. The case is submitted.